**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**GERALD T. ANDERSON,**

                     **Plaintiff,**

**-vs-**                                      **Case No.  6:06-cv-506-Orl-31KRS**

**CITY OF ORLANDO,**

                     **Defendant.**

_____

## ORDER

This matter comes before the Court on the Motion for Summary Judgment (Doc. 22) filed by the Defendant, City of Orlando, and the response (Doc. 26) filed by the Plaintiff, Gerald T. Anderson ("Anderson").

**I.  Background**

The following is taken from the "Statement of the Facts" section of the Plaintiff's response or from portions of the Defendant's "Statement of Undisputed Material Facts" to which the Plaintiff did not object.

Anderson is an African-American male formerly employed by the City of Orlando Police Department ("OPD").  He began working for OPD in May 1997.  He received several promotions, including one to the rank of sergeant in May 2002.  He eventually attained the position of Inspections Unit Supervisor, which reports directly to the Chief of Police and the Chief's staff. The Inspections Unit performs audits, drafts policies, and otherwise oversees the internal functions of OPD.

While serving as Inspections Unit Supervisor, Anderson began applying for a promotion to the rank of lieutenant. From May 2004 to September 2005, approximately 10 other candidates were promoted to lieutenant, but Anderson was not. Sometime shortly after September 4, 2005, when another candidate received a promotion to lieutenant that he had sought, Anderson requested and received the log of disciplinary investigations against OPD officers, sergeants and lieutenants for the preceding two years. When Captain Paul Rooney ("Rooney") questioned Anderson about the matter, Anderson told him he got the log for his own personal knowledge rather than for official purposes, a violation of OPD policy. OPD also contends (and Anderson, in his response, does not dispute) that after failing to win the September 2005 promotion, Anderson became noncommunicative and withdrawn, affecting productivity within the Investigations Unit.

On September 15, 2005, Anderson filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"),[1] claiming discrimination and retaliation on the basis of race. The parties disagree as to whether and when Anderson informally notified his superiors that he had filed the charge, but formal notice of the charge was mailed by the EEOC on September 30, 2005 to the City, which subsequently forwarded it to OPD. Also on September 30, 2005, Anderson was transferred from the Inspections Unit to the patrol division and, within a month, to the midnight shift. Although his base rate of pay remained unchanged, he apparently lost some vacation time and faced new restrictions on personal use of his OPD vehicle. After a year on the midnight patrol, Anderson resigned from the OPD.

---

[1] Based on the record, the Court cannot discern whether Anderson filed the charge before or after he received the disciplinary log or talked to Captain Rooney about it.

On October 3, 2005, Anderson amended his charge of discrimination with the EEOC, raising the issue of his transfer and stating his belief that it was done in retaliation for filing the initial charge. On February 28, 2006, the EEOC issued Anderson a right-to-sue letter, stating that it had been unable to conclude that the information it had obtained established a violation. Anderson filed the instant suit on April 14, 2006, alleging discrimination and retaliation in violation of Title VII. Anderson subsequently dropped the discrimination claim. (Doc. 15). The City now moves for summary judgment on the retaliation claim.

## II. Legal Standards

### A. Summary Judgment

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Whether a fact is material depends on the substantive law of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). If there is an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof, that party must "go beyond the pleadings and by . . . affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted). Summary judgment is mandated against the non-moving party who thereafter fails to present sufficient evidence to establish a genuine issue of fact for trial. *Id.* at 322, 324-25.

In this review, the Court must consider all inferences drawn from the underlying facts in a light most favorable to the non-moving party, and resolve all reasonable doubts against the moving

party. *Anderson*, 477 U.S. at 255. If an issue of material fact exists, the court must not decide it, but rather, must deny summary judgment and proceed to trial. *Environmental Def. Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981).[2]

### B.     Retaliation

To establish a *prima facie* case of retaliation under Title VII, the plaintiff must show (1) that he engaged in statutorily protected expression; (2) that he suffered an adverse employment action; and (3) that there is some causal relation between the two events. *Meeks v. Computer Associates Intern.*, 15 F.3d 1013, 1021 (11th Cir. 1994). To establish a causal connection, a plaintiff must show that the decisionmakers were aware of the protected conduct and that the protected activity and the adverse action were not "wholly unrelated." *Gupta*, 212 F.3d at 590. For purposes of a *prima facie* case, close temporal proximity may be sufficient to show that the protected activity and adverse action were not wholly unrelated. *Id.*

To recover for retaliation, a plaintiff need not prove the underlying claim of discrimination that led to his protest, so long as he had a reasonable good-faith belief that the discrimination existed. *Id.* Once the prima facie case is established, the employer must proffer a legitimate, non-discriminatory reason for the adverse employment action. *Id.* The employer's burden is "exceedingly light." *Id.* The plaintiff must then demonstrate that the employer's proffered explanations are a pretext for retaliation; the burden of production shifts, but the burden of persuasion remains with the plaintiff. *Id.* An adverse employment action is "an ultimate employment decision, such as discharge or failure to hire, or other conduct that alters the

---

[2]All decisions of the Fifth Circuit prior to October 1, 1981 are binding precedent on this Court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee." *Gupta*, 212 F.3d at 587 (internal citation and quotation omitted). In determining whether an action other than an ultimate employment decision is sufficiently substantial to constitute an adverse employment action, the Court must keep in mind that Title VII is neither a general civility code nor a statute making actionable the ordinary tribulations of the workplace. *Id.* The determination must be made on a case-by-case basis, using both a subjective and objective standard. *Id*.

## III.  Analysis

The City makes three arguments supporting its entitlement to summary judgment. First, the City contends that Anderson did not suffer an adverse employment action – in other words, that he failed to show that "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Railway v. White*, 126 S.Ct. 2405, 2415 165 L.Ed.2d 345 (2006) (internal quotation and citation omitted). But the City's own presentation of facts belies this argument. Anderson went from a supervisory job, reporting to the Chief, to a midnight patrol job. He also lost some vehicle privileges and, apparently, some vacation time he had previously enjoyed. Despite the fact that Anderson's rate of pay was essentially unchanged and that he had served two previous stints on the midnight shift, it is at least a jury question as to whether a reasonable employee would have found the midnight-shift patrol position to be non-trivially less appealing than the position of Inspections Unit Supervisor. *See Burlington Northern* at 2415 (noting *inter alia* that schedule change may make little difference to many workers but matter "enormously" to others).

The City's second argument merits little discussion. The City contends that it lacked notice of the filing of the EEOC charge at the time Anderson was transferred. However, Anderson testified that he notified two of his superiors, including Captain Rooney, of the filing prior to the September 30, 2005 transfer. Anderson also points to the testimony of Deputy Chief Gauntlett ("Gauntlett"). When asked when he first learned that Anderson had filed an EEOC charge, Gauntlett responded, "The exact date I could not tell you, but I want to say it was sometime in late September." Anderson's testimony and that of Gauntlett suffice to raise a genuine issue of material fact regarding the timing of the City's notice of Anderson's EEOC filing.

Finally, the City points to two purportedly legitimate, nondiscriminatory reasons for the transfer, both of which occurred in September 2005: Anderson's improper accessing of the disciplinary log and his becoming withdrawn and noncommunicative after being passed over for promotion. Anderson argues that the City gave inconsistent reasons for the transfer in its letters to the EEOC, thus demonstrating that those reasons were mere pretexts. According to Anderson, in the first letter to the EEOC, "Deputy City Attorney Jody M. Litchford responded to the charges of retaliation by stating that the [City] did not have knowledge of Plaintiff's charge of discrimination and therefore, there could be no discrimination." (Doc. 26 at 8). In the second response to the EEOC, according to Anderson, the City "shifted its reasons" to two previously unmentioned issues – the "alleged withdrawal from participation in the workings of the Department" and the "alleged access of confidential internal affairs documents".[3] (Doc. 26 at 8).

---

[3] As noted above, despite referring to them as "alleged," Anderson in his reply never denies the City's contentions regarding his becoming withdrawn and his improper access of the discipline log.

However, Anderson seriously misrepresents the record. The City's explanation never "shifted." In the City's first response to the EEOC, dated October 31, 2005, Litchford was responding to Anderson's initial charge, dated September 15, 2005, in which the "retaliation" box was checked but which (obviously) did not refer to the transfer because it was filed two weeks before the transfer occurred. As such, in a subparagraph titled "<u>Retaliation</u>," Litchford noted the absence of "substantive allegations of retaliation" in the charge and explained that, as a result,

> I am unable to respond in any detail to this allegation, other than to state that the Police Chief, who was the individual responsible for making promotion decisions, was at the time of making any of the decisions herein referenced, unaware of prior complaints (if any) of discrimination made by [Anderson].

(Doc. 24-7 at 4). Anderson first mentioned the transfer in his amended charge, which was the subject of Litchford's second letter. In the second letter, Litchford contended that the Chief was unaware of the filing of the charge of discrimination when he decided to transfer Anderson, a decision she ascribed to "reasons related to unit productivity and actions of [Anderson] that were inconsistent with his unit's productivity objectives and inappropriate for his position." (Doc. 24-8 at 2). Thus, the City's explanation for the transfer never shifted from one letter to the next, because the City only addressed the transfer in the second letter.

Finally, Anderson references an alleged conflict between the testimony of Gauntlett and Rooney as evidence of pretext. Anderson does not identify the conflict that allegedly demonstrates pretext, but the Court assumes it is the disagreement between Rooney's contention that he was unaware of Anderson's filing of the EEOC charge until after September 30 and Gauntlett's statement that "[t]he exact date I could not tell you, but I want to say it was sometime in late September" when he learned of the filing from Rooney. However, this "conflict" is too tenuous

and too off-topic to raise a genuine issue of material fact as to whether the City's stated reasons for Anderson's transfer were pretextual.

### IV.    Conclusion

In consideration of the foregoing, it is hereby **ORDERED AND ADJUDGED** that the Motion for Summary Judgment (Doc. 22) filed by the Defendant, City of Orlando, is **GRANTED**. This case is removed from the November 2007 trial term, and the Clerk is directed to close the file.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on August 2, 2007.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party